May it please the court. I'm Rebecca Kurz and I'm arguing on behalf of Mr. Billy Puckett this morning. Mr. Puckett was stopped for a couple traffic violations. He was not wearing a seatbelt and had a handicap placard hanging from his rearview mirror. The stop started as one normally would, getting license and registration and those types of things, but it quickly began to focus on the fact that Mr. Puckett was a registered sex offender. The officer ran two computer checks, one for the sex offender registry and one for the driver's license. Both came back valid. The second of those came back valid at 6.04 on the dash cam clock. With the computer checks completed, the last task associated with the traffic violations was to issue a citation. Instead of doing that, the officer digressed. He went down another line of questioning. Is there any stolen property in your vehicle? Are there any drugs in your vehicle? Is there anything illegal in your vehicle? Will you give me consent to search? And Mr. Puckett did. And he got no problem with that, right? Yes. Yes. Good point though to another issue. Free and easy consent with the search of his truck, completely different demeanor when it comes to search of his phone. And I think the contrast in those two is interesting because we argue the consent to search the phone was not valid. It was not voluntary. Whether this stop is reasonably extended or unreasonably extended doesn't depend on the fact that it was only a 26-second digression of questioning. Rodriguez says there are no de minimis excursions that officers may take. I think this case is controlled by United States versus Allen. It's cited in both briefs. The key part is on page 908. By proceeding with a search, instead of completing the investigation and citation for a parking violation, Officer Holtan extended the traffic stop beyond the time necessary to complete the stop's mission. So the question is, is something interrupting the normal completion of issuing a citation? Same thing in a case by this court decided last week in United States versus Strother. I filed a 28-J letter on this one. The gentleman in that car was speeding. Stop was proceeding normally. The officer had started to write the citation. But unexpectedly, a passenger got out of the vehicle and entered the backseat of the car. The officer went to investigate that. That person could have possibly been getting a weapon. That was a legitimate thing to go investigate and interrupt the writing of the citation. The court said there was no evidence the officer stopped citation-related tasks or engaged in gun or drug-related investigation before the passenger emerged from the SUV. I think the way these line of cases are going is it's less about how much time is added on to a stop or how long the deviation occurred. It's was the officer diligently pursuing the traffic violation by writing a citation and wrapping up any investigation? Or did he let something interrupt him, something unsupported by reasonable suspicion, to detour from the mission of the stop? What about the Mathis case? Are you familiar with it, counsel? I believe... This is 23 seconds, as you know. I've got no problem with it. And Mathis says, A question that does not extend the stop beyond the time required for the defendant to return to the driver's seat. 23 seconds is getting there on time to get there. I disagree with that analysis because it's not about could you have got it done. Does a typical traffic stop in general or in specific for this officer, if he gets everything done before his 12-minute mark or whatever it is, it's okay? Rodriguez refuted that. I think Mathis in that particular portion of the case is wrong. But here's what's really going on with Mathis. There was one officer. There were three passengers. He's waiting for computer checks to be run. He has an occupant who is under active supervision, so he can do a frisk and he finds methamphetamine. The other two occupants admitted that they had prior drug arrests. That officer in Mathis had reasonable suspicion pretty close into that stop. And for whatever reason in that case, the computer checks were a little bit delayed. Did the district court consider the 23 seconds? Yes. And the district court actually, the R&R, mentioned that it was 20 seconds and said, since that was a short deviation and continued on. But what the district court did was it cited United States versus Rivera, R-I-V-E-R-A. And I talk about this in my brief. That case was pre-Rodriguez. Before that time, de minimis extensions of a stop were okay. So the district court relied on outdated authority, pre-Rodriguez authority. But Mathis is after Rodriguez. It is. Do your own. But I think the particular portion from Rodriguez that answers that is where the court said, on-scene investigations of other crimes detour from the mission of the SATOP, and so do safety precautions taken in order to facilitate such detours. So it's not just the detour, but any safety concerns. And one thing the government was arguing in its 28-J letter, is that there were safety concerns here to ask about. Do you have drugs in the car? Do you have, whatever it was, guns? Do you have anything illegal? The officer's safety issues, I think, can be disposed of simply by watching the video. The officer turns his back on my client two times. Let's him walk his dog. Let's him get the dog out. Let's him put the dog back in. When the dog goes back in, the officer turns his back, walks around the patrol vehicle, and he lets Mr. Puckett do whatever he wants inside of that car. My client doesn't have a shirt on. He's got nothing around the waistband of his shorts. I just don't think officer safety can really be used here. I'm quickly running out of time, but I feel like the seizure of the phone required probable cause. There's a line of Eighth Circuit precedent that talks about picking up packages in the mail and luggages at airports. You can do that because that's the understanding between you and the airline company, or you and FedEx. They're going to handle your package. It's going to get manipulated around. It might be put on the floor for a dog sniff to go by it. We don't have that same expectation with our cell phones. We don't allow people to pick them up and shake them to get the screen to light up. Didn't the district court make a finding to the contrary of that? Didn't the district court found that it just lit up? I thought the district court agreed with the officer it just lit up. Once the phone was moved, right, and the question is by moving the phone is there a seizure, right? Yeah. And so the question really is you give consent to search a car. Ordinarily, people would say, well, that means you can move something around to see what's underneath it. The phone's not very big. But what are you looking for? If you're looking for a small sheet of paper like a Post-it note, yeah, you can move the phone. This, I think, is like the playing field doctrine. You can pat me down to look for weapons. You immediately determine I don't have a weapon, but maybe I've got something like a meth pipe or a rock of cocaine. You can't manipulate the outside of my pant pocket to determine what it is. Same with Arizona versus Hicks. You can't pick up the stereo, look at the serial numbers, and go on. The phone had nothing to do with a handicap placard violation or not wearing a seat belt. Does X show whether the movement of the phone was an intentional movement or was just kind of jostled? He said he grabbed it. Because it didn't take much to make a phone light up. He said he grabbed it. So he grabbed it, and then he pulled the plug. It was either in a cigarette lighter or some kind of power source. Thank you. I'll reserve the remainder of my time. Welcome back, Mr. Davids. Thank you, Your Honor. May it please the Court, my name is Justin Davids. I am an AUSA for the Western District of Missouri, and I represent the Appalachian United States of America. I want to begin by assuming just for the sake of argument here that the stop was unreasonably extended. The difference here between other cases applying Rodriguez and holding a bright-line rule is that consent to search was given. And consent to search necessarily extends the stop. So between the computer dinging and then the consent given, what is the effect of that 23 seconds? Was the consent, and the argument that we're making is that the defendant's consent attenuated any unreasonableness of that extension. And so was that consent the product of the police misconduct? Was the defendant's consent an act of free will unaffected by this unreasonable extension? And here, there's nothing to suggest that it was. We're talking about a very limited time. We're talking about the question itself being mere seconds. There's nothing to indicate that by extending the stop, this affected the defendant's voluntary consent to search his vehicle. There was only one officer. He was not in custody or in handcuffs. They were having a cordial conversation. There were no threats made, no promises, no show of force. It occurred in public on the side of a public highway during the day. And it was a very short period of time. And so even if Rodriguez applies, I don't believe that this is a situation that is fit for the exclusionary rule here because once Mr. Puckett gave his consent to search the vehicle, that was unaffected and that allowed for an extension of the stop. Also here, though, the government continues to believe that there was not an unreasonable extension. Mr. Puckett makes an argument that the officer was kind of aggressive and domineering. In his request to search the cell phone? All right. Well, that is beyond the unreasonable extension argument. That goes to the consent to search the cell phone, which came after the search of the vehicle. And there's nothing in the case law. He was persistent in asking for consent, but the defendant wasn't saying no. The defendant wasn't saying no, I don't. The defendant was being evasive. And the officer would ask for consent and the defendant would say, well, I do have these pictures, but they just pop up on their own and I don't really know how they got there. And then the officer keeps inquiring. And eventually the defendant says, sure. And that's a different situation than an officer going, can we have consent, and someone being like, I don't want to do that, I know you can't, and then the officer persisting in asking it and badgering someone until they get an answer. Well, we skipped the movement. The exact finding of the specific court is officer moved a cell phone sitting in the driver's seat, which then illuminated on its own. Now, is the movement like the kind the Supreme Court has condemned? I don't think that the movement, I don't think the officer did anything wrong by moving the phone. First of all, the defendant gave a general consent to search. It wasn't limited or restricted in any way to only evidence related to the sex registry or his traffic violations. It was a general consent. So at that point, I think the officer can move items in the vehicle as part of his search. But there's nothing in the record to suggest that the officer moved that phone simply because he was trying to look at the screen in any way. I think that this is much different than Hicks, where officers entered an apartment, I think it was, or a house for exigency, right? That wasn't consent, that was exigency, but they were able to get in there. And then once they were in there, an officer thought he saw some stereo equipment that was suspicious, and then he moves that and finds the serial number and confirms that it's stolen, right? This is a different situation than that. So what's he looking for such that moving the phone is okay? I mean, what you have right now is consent to a fishing expedition to do any doggone thing you want, right? And if that's the case, are there any limits to it at all? I think there are limits in the sense that he couldn't actually start rummaging through the phone, right? All right, so he couldn't open a locked container or a closed container? I think he could potentially open a locked container in a car, but I think phones are different. I think electronic storage devices are different under the law, right? So this wasn't an officer safety search at this point. You didn't ask, can I take, I mean, even though that's sort of the pretext that people are talking about in the briefing, right, is that we're looking for contraband or we're looking for things for officer safety. And this phone is sitting where? Like on the driver's seat. It says in the driver's seat, on the seat, right? And so what, there's some big contraband or guns underneath that phone? Well, I think he could move it because he wanted to bring it back to the defendant, which is what he did. I don't think he had to leave it in the car. Why would he want to bring it back to the defendant, who he's going to turn loose in the next 28 seconds anyhow? To ask for consent to search the phone. I think he can do that. You think that without, so it doesn't matter at all that the phone lit up and he saw the icons. That's a complete red herring. We don't need to talk about that, think about that? I think that, I do think you can, you think about that in the sense that once he sees what's on the screen, he now has reasonable suspicion. Right. Right. But I don't think that. But does the record show the officer just intended to pick that phone up and walk back to the defendant and say, hey, I want to search your phone? I think it can be inferred from the record. I think that's why he was, that he's moving it and then unplugging it because he's going to bring it back, which he does. But there's no finding on that? I have the three or four sentences in front of me. There's no finding on that? I think it's understood. There's no specific finding, but I think it's understood by everyone that that's what was happening. I don't think that there's any record that he was intending to search the phone without the defendant's consent. I think he can move things at will in a car. I think he could, if there was a piece of paper on the seat, he could move that piece of paper. Right. I don't think that just because the phone lit up that that's indications that he was intending to search the phone. There's nothing in the record that supports that. Your Honor, going back to the extension of the traffic stop, I just want to raise the Mathis case, which Judge Benton was discussing, and also Salko. And I think that the points of those cases, not only do they, I think they're applicable to the attenuation and the idea that those cases also seem to recognize that, like, look, like, you know, if it's within the reasonable amount of time that the traffic stop would have taken, it's not an unreasonable extension. And I think that can be applied to the attenuation doctrine as well as part of its factors. But here, you know, I think that there's, you can reasonably infer that both, that 20-some seconds, it would have taken longer to write a ticket, it would have taken longer for the defendant to walk back to his vehicle, and then by the time the consent is given, the stop is extended. And so I understand the defendant's arguments about Rodriguez, but I think it's this consent that throws in the additional wrinkle and applies Salko and Mathis to this case. If there are no further questions, the government will request that the court affirm the judgment of the district court. Thank you. Thank you, Mr. Davids. Ms. Kerrs. Mr. Puckett gave consent to search his truck. He did not give consent at that point in time to search his phone or to seize it. Scope of consent is determined by the reasonable understanding of the officer and of the defendant. The lead up to this search of the car was, do you have guns? Do you have stolen property? Do you have drugs? Nobody would conclude from hearing that conversation that it would be reasonable to grab and search somebody's phone. We know it wasn't for looking for guns or anything else because he stopped searching immediately after he picked up the phone. He wasn't looking around under the seats or in the glove box or anything else. When he takes the phone to Mr. Puckett, he acts as if it's his piece of evidence. At 1058, he prevents Mr. Tuckett from touching the phone. He says, what are you doing? Don't do that. I don't want you touching it. This is not Gimeno v. Florida where the officer was searching for drugs and he opened up a paper sack in the front seat of the car because that's logical. Drugs could have been hidden there. He wants to say, well, it's logical, or I think what he's saying is it's logical to get on the phone of a sex offender at any time. Owning apps is not a crime. Packingham v. North Carolina decided that. You can't figure out if it's a crime unless you know an offender has three business days to put those apps on his registry. He didn't know when those apps were on the phone just from looking at the home screen. All he knows is those apps exist. There's a Missouri statute on it. It's 589-404, I believe. It's in my brief. If there are no further questions, thank you for your time. Thank you, Ms. Kurz. Thank you both for providing argument to the court in supplementation to the briefing which has been submitted and we'll take the case under advisement.